Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1453 | **DATE** | 4/10/2000 |
| **CASE TITLE** | HUFF, etal vs. ZARUBA, etal | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (102-1 and 106-1) for summary judgment is granted/denied in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 11 2000 | |
| | Notified counsel by telephone. | date docketed | 118 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| DW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAREN HUFF and JUNE FRANKLIN, )
)
Plaintiffs, )
)
v. ) Case No. 97 C 1453
) Judge James B. Zagel
DUPAGE COUNTY SHERIFF'S DEPT., )
DUPAGE COUNTY SHERIFF JOHN )
ZARUBA, in his official capacity, )
CORPORAL DENNIS GUZLAS, )
individually and in his official capacity, )
CITY OF AURORA, a municipal entity, )
DAVID PIERCE, in his official capacity as )
as Mayor of the City of Aurora, )
DAVID STOVER, in his official capacity )
as Chief of Police for the City of Aurora, )
SGT. GREGORY ANDERSON, )
individually and in his official capacity, )
INV. JEFFERY SAUER, individually )
and in his official capacity, *et al.* )
)
Defendants. )

DOCKETED
APR 1 1 2000

## MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Huff and June Franklin, Illinois residents, vacationed in Atlanta, Georgia in 1995. While there, they were arrested for moving traffic violations, charged by a City Court of Atlanta and released on bail. They posted bond with a private bonding agency, the Express Bail Bonding Agency, and returned to Illinois. Mistakenly believing that they would simply forfeit the amount of their bonds ($363 and $486, respectively) if they did not appear in court, neither woman returned to Georgia for her scheduled court date. In fact, the private agreement that both women signed with the bond agency authorized it to return them to court in Georgia

should they fail to appear for their court appearance. When the plaintiffs did not appear, the Atlanta court entered three orders against them: a forfeiture of recognizance, a *scire facias* and an order for hearing. The court did not issue warrants for their arrest.

Eight months later, Express Bail Bonding Agency hired two bondsmen, Raymond Berry and Roger Cook, to locate and apprehend the plaintiffs. Neither Berry nor Cook is a police officer. Upon arriving in Illinois, Cook and Berry presented themselves at the Aurora Police Department and requested assistance in locating June Franklin at her work address. A detective there told them that Wheaton, Illinois, where Franklin worked, was in DuPage County, and placed a phone call to law enforcement officers there.

Deputy Sheriff Dennis Guzlas of the Dupage County Sheriff's Department subsequently met Berry and Cook at an Arby's Restaurant in Wheaton, where Franklin worked. Guzlas had received a radio dispatch in his squad car to provide stand-by assistance to another agency in an arrest. When he arrived, Guzlas met with the bondsmen in the parking lot. Berry and Cook identified themselves to the officer as fugitive recovery agents. They were wearing jackets with the words "Georgia Fugitive Recovery" on the back. Both wore handguns on their side. They showed Guzlas their identification, which was official-looking, but upon close inspection, not official. They showed Guzlas court documents from the State of Georgia, which showed that Franklin had violated the conditions of her bond and that it was forfeited. Guzlas says that Cook told him that he was a police officer.

Guzlas then accompanied them into the restaurant, where they found Franklin. The three of them and Franklin proceeded into a back room at the restaurant, where Berry and Cook explained to her that they had come to return her to Georgia. Berry and Cook are the ones who

informed her of the situation, told her that she had to go with them, and negotiated with her over whether she could avoid apprehension by paying the full amount owing on the bond that day. While they were there, Franklin made a number of phone calls, one to a friend to try to get the money to cover the bond amount and at least one to try to find another manager to cover for her at work. Berry and Cook would not accept payment of the bond and Franklin ultimately went with them. They handcuffed her in the parking lot, led her to their van, and shackled her inside the vehicle. Guzlas departed and Cook and Berry drove to Aurora with Franklin.

It is undisputed that Guzlas had very little interaction with Franklin throughout the encounter. According to him, as he understood his job, he was providing stand-by assistance to officers of another agency while they made an arrest. While in the restaurant, he stood seven or eight feet away and did not hear the substance of Franklin's phone conversations or interaction with Berry and Cook. Franklin does not dispute this; she doesn't remember any real conversation with Guzlas in the restaurant, just "a couple of words here or there. I don't even remember what they were." There is evidence that Guzlas did have some substantive interaction with her, though. Guzlas says that he questioned Franklin directly and ascertained that she in fact had been to Georgia, had been arrested and released on bail, had failed to make her court appearance, and that she knew why Berry and Cook were there. Berry says that Franklin asked Guzlas whether she had to go with them and he told her more than once that she did.

Berry and Cook then drove back to the Aurora Police Department to enlist aid in tracking down Karen Huff. Cook went inside. Berry and Cook were still wearing the jackets with "Georgia Fugitive Recovery" on the back. They still wore handguns, had official-looking identification, and showed documents (but no warrant) issued by the Georgia court. Officers

-3-

Anderson and Sauer accompanied Cook outside to the van where Berry and Franklin were waiting. They drove to Huff's home in separate vehicles. Cook and Anderson entered Huff's residence through the front door, after Cook announced their presence. Sauer remained outside the front door. Berry went around to the back door of the residence. Huff soon left the house through the back door and Berry stopped her. He handcuffed her and brought her to the van. Neither Anderson nor Sauer asked Huff any questions, nor did they observe Cook or Berry doing so. After Huff was in the van, Sauer asked Cook and Berry their names, phone numbers and badge numbers so that he could complete a police report on the apprehension. Anderson and Sauer then left and returned to the Aurora Police Department.

Berry and Cook left Illinois immediately, with Franklin and Huff, and took them back to Georgia, arriving several days later. While in a motel in Indiana, the men sexually assaulted both women.

Franklin and Huff filed suit against DuPage County Sheriff John Zaruba, in his official capacity, and Officer Dennis Guzlas, in his individual and official capacities (collectively "DuPage Defendants") under section 1983 for violating their rights under the Fourth, Fifth and Fourteenth Amendments. Plaintiffs filed the same claims against Aurora officers Gregory Anderson and Jeffrey Sauer, in their individual and official capacities, Mayor David Pierce and Chief of Police David Stover, in their official capacities, and the City of Aurora (collectively "Aurora Defendants"). All DuPage and Aurora Defendants now move for summary judgment on all counts.[1]

---

[1] Plaintiffs also sued Express Bail Bonding Agency, Rose Hill-Williams (the bond agency's owner), Roger Cook, Raymond Berry, and the Georgia Fugitive Apprehension Bureau. None of these defendants has joined these motions.

-4-

## Section 1983 – Individual Capacity Claims

   *A.   Fourth Amendment*

Plaintiffs claim that the defendants violated their Fourth Amendment rights when they helped Berry and Cook arrest them. The first line of defense is that the Fourth Amendment doesn't apply at all, because Franklin and Huff had already been arrested and taken into custody in Georgia. Relying on *Taylor v. Taintor,* 83 U.S. (16 Wall.) 366 (1872) and *Carlson v. Landon,* 342 U.S. 524, 546, 72 S. Ct. 525, 537-38 (1952), the defendants argue that the plaintiffs' act of posting bond simply transferred their custody from the Georgia court to the bonding agency. Therefore, they reason, at the time of the women's arrests, each was a pre-trial detainee, whose constitutional rights are governed by the substantive due process clause of the Fourteenth Amendment, not the Fourth Amendment. *See Armstrong v. Squadrito,* 152 F.3d 564 (7th Cir. 1998); *Wilkins v. May,* 872 F.2d 190 (7th Cir. 1989). This is a creative argument and one to which the law does not provide a clear answer. The Seventh Circuit has applied the Fourth Amendment to the rearrest of a bailee in the past, although in an opinion issued prior to cases in which it recognized that the due process clause governs after a judicial determination of sufficient cause. *See United States v. Holmes,* 452 F.2d 249, 260-61 (7th Cir. 1971). I need not resolve the question whether rearrest of an individual who violates bond by his or her custodians is governed by the Fourth or Fourteenth Amendments, however, as that is not the situation presented here. It is not argued that Illinois or Aurora or DuPage had custody of the plaintiffs, and individuals, even those in custody, are surely protected by the Fourth Amendment from illegal searches and seizures by those other than their custodians. The Fourth Amendment applies.

There are many disputed facts material to resolution of these claims. Drawing all inferences in favor of the plaintiffs, a trier of fact reasonably could believe that Guzlas knew that Cook and Berry were not police officers, but bondsmen or bounty hunters, and that they did not have a warrant issued by an Illinois magistrate as state law requires. Neither man had official police identification with him nor wore an official uniform, and both identified themselves only as being from "Georgia Fugitive Recovery," which (if it exists at all) is not a governmental law enforcement agency. It is undisputed that no warrant ever issued, that no document purporting to be a warrant was ever shown to Guzlas, and that Cook and Berry did not represent that they had already been before an Illinois magistrate.

Therefore, at core, Franklin's claim is that Deputy Guzlas violated her rights when he assisted in what he should have known was an illegal seizure of her person by private parties. A private party may not seize another person in Illinois for bond forfeiture; there is no right to arrest. While the common law traditionally provided bondsmen the right to arrest in order to surrender a principal to authorities, Illinois abrogated that right when it enacted the Uniform Rendition of Accused Persons Act, 725 ILCS 230/1, *et seq.* Rather, a representative of the out-of-state court must provide certain documentation to an Illinois magistrate and request the issuance of an arrest warrant, which will issue to a law enforcement officer of Illinois. *See* 725 ILCS 230/1. As Guzlas knew that Cook and Berry had not followed the mandatory state procedures and did not have the necessary arrest warrant, a reasonable officer in his position would have known that they had no right to arrest Franklin themselves, and that they were conducting an illegal private seizure.

Nor did Guzlas have probable cause to make the arrest himself. All of his information came from Cook and Berry, and the word of two private citizens that probable cause existed under Georgia law to arrest Franklin for violating her bond agreement is not enough to establish probable cause. Even if he verified some of the basic information with Franklin (a disputed fact), he had no way of knowing that the facts as he knew them constituted an arrestable offense.

Guzlas's defenses are non-participation and qualified immunity. The first fails because there is evidence that his participation rose to the level of assistance, rather than just a peacekeeping presence. Dressed in his sheriff's uniform, Guzlas accompanied Cook and Berry throughout their entire interaction with Franklin. He himself questioned her on her name and about her interactions with the Georgia court system and the Express Bail Bonding Agency. And when she asked him whether she had to go with Cook and Berry, Guzlas told her more than once that she did. This final action tips the scale into participation, as it shut down her objections to what was actually an illegal arrest. *See Soldal v. County of Cook,* 942 F.2d 1073, 1075 (7th Cir. 1991)(en banc), *rev'd on other grounds,* 506 U.S. 56, 113 S. Ct. 538, 121 L.Ed.2d 450 (1992)(state action issue survives summary judgment when police presence at trailer removal and eviction of occupants prevented plaintiff from resisting eviction); *Greco v. Guss,* 775 F.2d 161, 168 (7th Cir. 1985)(standing near door and never speaking to plaintiff during seizure not enough to constitute participation, while serving warrant and telling plaintiff he had to leave the premises and that warrant was valid was enough). Also, it is not clear that non-participation is always a valid defense as a matter of law. There may be some cases in which the Constitution prohibits a state actor from watching a clearly illegal private party seizure without acting to prevent it in some way.

The second defense fails because one cannot claim that it is not clearly established law that a police officer violates the Fourth Amendment by assisting private parties in the illegal seizure of a person.[2] This is because the police assistance essentially transforms what would be a purely private search into one by state actors, and it is clearly established law that an officer cannot arrest an individual absent a warrant or probable cause. Guzlas relies on the Seventh Circuit's opinion in *Apostol v. Landau*, 957 F.2d 339 (7th Cir. 1992), in arguing that the law is not clearly established. *Apostol* is no help, as there are critical factual differences: the officers did not participate in the private search, but only stood by, and the search itself was made pursuant to a facially valid warrant. As no reasonable officer could have thought the private seizure was legal, that there was a valid warrant, or that probable cause existed on these facts, Guzlas is not entitled to qualified immunity at this time. *See Tangwell v. Stuckey*, 135 F.3d 510, 513 (7th Cir. 1998).

Huff's claim against Officers Anderson and Sauer remains standing for the same reasons. Drawing all inferences in favor of the plaintiffs, a trier of fact reasonably could believe that Anderson and Sauer knew that Cook and Berry were not police officers, but bondsmen or bounty hunters, and that they did not have a warrant from an Illinois magistrate as the state requires. The officers saw the same uniforms, the same identification and were told the same things as

---

[2] This case is similar to another I have considered in which the allegations, if true, present a plainly obvious violation, which the courts have not had an opportunity to address. In that case, I wrote: "It is a profound insult to the dignity of the service when a police officer submits testimony which the officers knows to be false in order to secure a warrant or indictment. Using evidence known to be false violates a fundamental duty of the officer. From the duty rises the right to be free from its violation. Even in the absence of judicial decision and specific statutory enactment, this right is clearly established, and any reasonable officer would know this." *Stokes v. City of Chicago*, 744 F. Supp. 183, 188 (N.D. Ill. 1988).

-8-

Deputy Sheriff Guzlas. Again, no warrant ever issued for Huff's arrest, no document purporting to be a warrant was ever shown to Anderson and Sauer, and Cook and Berry never represented that they had seen an Illinois magistrate. Therefore, on these facts, both officers violated Huff's Fourth Amendment rights when they assisted in what they should have known was an illegal seizure of her person by private parties. Here the undisputed facts show that Anderson entered Sauer's home by force along with Cook and that Sauer covered the outside of the residence while Berry covered the back, facts which show active participation on the part of the officers. While Sauer's behavior, in particular, is on the borderline between active participation and provision of a police presence, it is a factual question for the jury.

The officers do not raise a qualified immunity defense, but they are not entitled to it anyway, for the reasons stated above. Their asserted defense that they did not have the requisite state of mind while acting is of no help. In the Fourth Amendment context, the law requires only that individuals act intentionally in taking the actions they do, not that they intend to violate an individual's constitutional rights. Lack of bad intent is not a defense. *See Lester v. City Chicago,* 830 F.2d 706, 712 (7th Cir. 1987).

As a final note, it should go without saying that as Guzlas played no role in the arrest of Karen Huff, and Anderson and Sauer played no role in the arrest of June Franklin, the officers are relieved of any liability for violation of the respective woman's Fourth Amendment rights.

### B. *Fourteenth Amendment, Substantive Due Process*

Plaintiffs argue that the police officers violated their substantive due process rights by releasing them into the hands of the bounty hunters, whom plaintiffs contend they should have known posed a danger to the women, and on whom they had not run criminal background

-9-

checks. The argument is that the actions of the officers created a custodial relationship with the plaintiffs, or at least caused or greatly increased the risk of harm to them, and triggered under the law special duties to protect their safety and well-being, as recognized by the Supreme Court in *DeShaney v. Winnebago Cty.*, 489 U.S. 189, 190 S. Ct. 998 (1989).

These claims fail because there is no evidence in the record of any known danger to the women. Even assuming that the officers had the women in a custodial relationship or had placed them in a situation that would trigger the *DeShaney* protections, which I doubt, the officers cannot be found liable for failing to protect the women from a danger that they could not reasonably have known to exist. There is no evidence that the officers knew that Cook or Berry had a criminal record or knew anything else about them that would make them suspect that the men posed a danger to the women. Bounty hunters do not pose *per se* dangers to those in their custody. This situation is not equivalent to releasing a heavily intoxicated man on the side of a busy highway, to subjecting a child to a known danger of abuse, or to permitting an involuntarily institutionalized mental patient to injure herself due to a failure to provide appropriate treatment. It is possible that statistics would bear out the plaintiffs' theory that bounty hunters are so dangerous that allowing one to take custody of a private citizen in a police officer's presence would be a known danger, but no such showing has been attempted here. Indeed, had the state rendition procedures been followed exactly, the state likely would have properly released the women into Berry and Cook's custody so that they could be returned to Georgia.

Plaintiffs argue that they also faced a danger of "not being extradited in accordance with Illinois law." This is not the type of danger that concerned the Supreme Court in *DeShaney*.

## C. Fourteenth Amendment, Procedural Due Process

Plaintiffs argue that defendants Anderson, Sauer, and Guzlas deprived them of a liberty interest without procedural due process, when they allowed Berry and Cook to leave with the women without ensuring that Franklin and Huff received the state procedures provided in the Uniform Rendition of Accused Persons Act (URAPA), 725 ILCS 230/1, *et seq.* Plaintiffs locate this asserted claim of entitlement to the URAPA procedures in two Illinois laws: a criminal statute prohibiting bail bondsmen from taking unwilling persons out of the state without following the state's procedures, 725 ILCS 5/103-9, and URAPA itself, which creates those procedures.[3] The women argue that mandatory language in the criminal statute that "the return of any such person to another state may be accomplished only as provided by the laws of this State" creates a protected liberty interest in the procedures.

Plaintiffs' reasoning is flawed. While state law can be the source of a substantive entitlement to liberty that the due process clause protects, it is the parameters of the due process clause itself that determine what procedures are required. *See Villanova v. Abrams*, 972 F.2d 792, 798 (7th Cir. 1992). URAPA is a purely procedural statute and therefore cannot be the source of a protected liberty interest. The criminal statute suffers from an additional flaw in that it criminalizes a private party's failure to follow state-specified procedures and therefore could

---

[3] Plaintiffs also cite Illinois's adoption of the Uniform Criminal Extradition Act, 725 ILCS 225/2 *et seq.*, as a source of their entitlement to receive state-designated procedures. As plaintiffs were not the subject of an extradition request by the Governor of Georgia, they were not entitled to these procedures under Illinois law, let alone the Fourteenth Amendment. While government actors can be subject to §1983 liability for violation of the Extradition Clause, art. IV, § 2, no such claim has been made here.

hardly be the source of a substantive right for a third party to receive those same procedures from the state.

    *D.    Fifth Amendment*

Plaintiffs baldly assert that the defendants violated their Fifth Amendment right to privacy, cite to the Seventh Circuit's decision in *South-Suburban Housing Ctr. v. Greater South Suburban Bd. of Realtors,* 935 F.2d 868 (1990), and leave it at that. That case involves alleged First Amendment and equal protection violations and provides no support for their theory.

They also contend that the individual defendants violated their rights under the Fifth Amendment by not advising them that they have a right to counsel, as mandated by *Miranda v. Arizona*, 384 U.S. 436 (1966). Standing alone, however, the failure to give Miranda warnings will not create liability under § 1983. *See Thornton v. Buchmann*, 392 F.2d 870, 874 (7th Cir. 1968); *Bennet v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976).

Section 1983 -- Official Capacity Claims

Plaintiffs' official capacity claims are really claims against the City of Aurora and the DuPage County Sheriff's Department. As these entities cannot be held liable under principles of *respondeat superior,* there must exist a municipal or departmental custom or policy with a direct causal link to the unconstitutional conduct. *See Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997). Plaintiffs assert that the entities failed to provide any training to their officers on how to deal with bounty hunters and bondsmen, and that that failure constituted deliberate indifference to the constitutional (here, the Fourth Amendment) rights of those with whom the police came into contact, namely those sought after by bondsmen.

The Seventh Circuit has employed a three-part test in determining if a government entity acted with deliberate indifference in failing to train its employees, whether: (1) a policy maker knew to a moral certainty that employees will confront a given situation; (2) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (3) the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights. *See Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000). The requisite showing has been made in this case. Given the common-law rights of bondsmen to capture fugitives without involving state officials, which are still viable in many states, it is highly likely and predictable that a foreign bondsman would seek to arrest persons in Illinois with disregard to or in ignorance of the state's abrogation of that right. As both governmental entities in this case assign line enforcement officers to the responsibility of responding to calls of this sort, it is predictable that officers will encounter the situation presented here, where a bondsmen wants help arresting a person who has forfeited bond in another state. Given the absolute illegality of such an arrest, training officers on the law would help eliminate the officer's participation and would prevent the constitutional violation. As there is evidence that none of the individual officers here received any training on handling requests from bounty hunters or bondsmen to arrest fugitives or on the applicable law, each governmental entity could be liable for the Fourth Amendment violations.

My findings that the individual officers did not violate the plaintiffs' Fourteenth or Fifth Amendment rights necessitate a finding of no liability on all official capacity claims for purported violations of these rights. *See Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998).

### State Law Claims

Plaintiffs charge all individual defendants with the common-law torts of false arrest and imprisonment, willful and wanton misconduct, and intentional infliction of emotional distress, and seek punitive damages.

The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff. *See Meerbrey v. Marshall Field and Co., Inc.*, 564 N.E.2d 1222, 1230 (Ill. 1990). The same inferences and evidence that support plaintiffs' § 1983 claims for violation of their Fourth Amendment rights support the denial of summary judgment on the false arrest and imprisonment claims. The official claims therefore survive as well.

Without otherwise conceding liability on the merits of the claims, defendants assert governmental immunity to these claims. Under section 2-202 of the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-202, a public employee is not liable for his act or omission in the execution or enforcement of any law, unless such act or omission constitutes willful and wanton conduct. As the officers were in the actual execution and enforcement of laws at all relevant times, they are immune unless their conduct showed an utter indifference to or conscious disregard for the safety of others, such as a failure to exercise ordinary care to prevent harm after knowledge of impending danger, or a failure to discover the danger when it could have been discovered by exercise of ordinary care. *See* 745 ILCS 10/1-210; *see A.R. v. Chicago Bd. of Educ.*, 724 N.E.2d 6, 11 (Ill. App. Ct. 1999). When the facts are

viewed in the light most favorable to the plaintiffs, the immunity question is a close one, and as it is a highly factual inquiry, I deny summary judgment.

Plaintiffs have not argued the merits of their claims for willful and wanton misconduct or for intentional infliction of emotional distress and thereby have waived them.

I dismiss plaintiffs' claims for punitive damages against the officers. Illinois law enforcement officers are not liable for punitive damages for acts taken while serving in an official executive capacity, which they were clearly doing here. *See* 745 ILCS 10/2-102; *Reese v. May,* 955 F. Supp. 869 (1996).

## Conclusion

For the foregoing reasons, I deny the DuPage defendants' motion for summary judgment on June Franklin's section 1983 claim for violation of her Fourth Amendment rights and the Aurora defendants' motion for summary judgment on Karen Huff's section 1983 claim for violation of her Fourth Amendment rights. I grant summary judgment for all defendants on all other section 1983 claims. Summary judgment is granted on the claims for intentional infliction of emotional distress and for willful and wanton misconduct and denied as to the false arrest and imprisonment claims. Punitive damages are out of the case.

In sum, the DuPage defendants' motion for summary judgment [102] and the Aurora defendants' motion for summary judgment [106] are granted in part and denied in part.

ENTER:

_____
Judge James B. Zagel
United States District Court

Date: 4-10-00